2014 COA 88

**Reid LESTER, Plaintiff–Appellant,**

v.

**The CAREER BUILDING ACADEMY, a Colorado Nonprofit Corporation; and Rick Johnson, LLC, a Colorado limited liability company, d/b/a Johnson Heating and Plumbing, Defendants–Appellees.**

**Court of Appeals No. 13CA0989**

Colorado Court of Appeals,
Div. I.

Announced July 3, 2014
Rehearing Denied October 9, 2014

David Lichtenstein, Ariel DeFazio, Denver, Colorado, for Plaintiff–Appellant

The Law Firm of Lee K. Rosenbaum, P.C., Richard E. Wootton, Colorado Springs, Colorado, for Defendants–Appellees

Sweeney & Bechtold, LLC, Joan M. Bechtold, Denver, Colorado; Lisa R. Sahli, Attorney at Law, LLC, Lisa R. Sahli, Englewood, Colorado, for Amicus Curiae Employment Lawyers Association

Sawaya & Miller Law Firm, David H. Miller, Denver, Colorado, for Amici Curiae Interfaith Worker Justice Committee of Colorado; FRESC; El Centro Humanitario Para Los Trabajadores; 9–5, National Association

of Working Women, Colorado Chapter; and Colorado Immigrant Rights Coalition

## Opinion by JUDGE TAUBMAN

¶ 1 This case presents the issue of whether a trial court may apply the same standard in awarding attorney fees to prevailing employees and employers under the Colorado Wage Claim Act (CWCA), sections 8–4–101 to –123, C.R.S.2013. We conclude that it may not.

¶ 2 The legislative declaration contained in the 2007 CWCA amendments has been interpreted to mean that a prevailing employee is presumptively entitled to attorney fees under the CWCA. *See Carruthers v. Carrier Access Corp.,* 251 P.3d 1199, 1208–09 (Colo.App. 2010); *see also* ch. 381, sec. 1, 2007 Colo. Sess. Laws 1677. However, the legislative declaration does not contain any provision concerning prevailing employers.

¶ 3 Plaintiff, Reid Lester, appeals the trial court's order denying him attorney fees under the CWCA, and its dismissal of his claims against defendant, Johnson Heating and Plumbing (JHP), under the alter ego theory. We reverse as to the denial of attorney fees and remand the case to the trial court with instructions to reconsider Lester's fee request. We affirm as to the dismissal of Lester's claims against JHP.

## I. Background

¶ 4 Lester's appeal arises from a jury verdict awarding him $12,307.69 in unpaid compensation based on breach of an implied contract with defendant, The Career Building Academy (TCBA). TCBA is a Colorado nonprofit corporation that provides high school students with vocational training with an emphasis on residential construction.

¶ 5 In 2011, Lester orally agreed to work as TCBA's chief operating officer. In exchange, Rick Johnson, the founder of TCBA, promised to pay Lester an annual salary of $150,000, of which $75,000 would be paid by TCBA, and the remaining $75,000 would be

paid by JHP, a business owned and operated by Johnson.

¶ 6 During the first six months of Lester's employment, TCBA paid him only twice, totaling $7884 in gross pay for wages and compensation. Lester resigned, and sent a wage demand to TCBA pursuant to section 8–4–109(3)(a), C.R.S.2013.[1]

¶ 7 TCBA rejected Lester's demand, contending that Lester agreed to volunteer as TCBA's chief operating officer. Lester then filed a complaint against TCBA and JHP, seeking unpaid wages and compensation, as well as penalties and attorney fees under the CWCA.

¶ 8 A jury determined that Lester had entered into an implied contract with TCBA, and returned a verdict in favor of Lester for $12,307.69 in unpaid wages and compensation. However, the trial court dismissed Lester's claim against JHP.

¶ 9 Following the jury's verdict, Lester requested that the trial court award him statutory penalties and attorney fees under the CWCA. TCBA objected, contending that the CWCA did not apply to an implied contract. The court ordered the parties to brief this issue.

¶ 10 In his brief, Lester contended that he was an employee who was owed wages or compensation under the CWCA. Relying on *Carruthers,* 251 P.3d at 1208–09, he asserted that section 8–4–110(1), C.R.S.2013, presumptively entitles a prevailing employee to an award of attorney fees.

¶ 11 The court agreed with Lester that CWCA applied to an implied contract; however, it denied his request for attorney fees. Specifically, the court applied the *Carruthers* factors used to determine an award of attorney fees to prevailing employers. The court acknowledged that *Carruthers* involved a different factual scenario, in which the prevailing employer, not employee, was seeking attorney fees. Nevertheless, it applied *Carruthers,* stating that the operative language in section 8–4–110(1) was the same for both

---

1. Section 8–4–109(3)(a), C.R.S.2013, states, "If an employer refuses to pay wages or compensation ... the employee or his or her designated agent shall make a written demand for the pay-

ment within sixty days after the date of separation and shall state in the demand where such payment can be received."

employees and employers. After applying those factors, the court denied Lester's request for attorney fees.

## II. Attorney Fees to Prevailing Employee Under the CWCA

¶ 12 Lester contends that the trial court erred in applying the *Carruthers* factors to a prevailing employee who is presumptively entitled to an award of attorney fees. We agree.

### A. Standard of Review

 ¶ 13 While we ordinarily review a trial court's denial of attorney fees for an abuse of discretion, *see Anderson v. Pursell,* 244 P.3d 1188, 1193 (Colo.2010), Lester's contention presents a question of statutory interpretation that we review de novo. *See Carruthers,* 251 P.3d at 1203; *Madison v. Capital Co. v. Star Acquisition VIII,* 214 P.3d 557, 560 (Colo.App.2009) ("We review de novo the legal analysis employed by the trial court in reaching its decision to award attorney fees."); *Bd. of Cnty. Comm'rs v. Kraft Bldg. Contractors,* 122 P.3d 1019, 1022 (Colo.App.2005) ("[The appellate court] may review de novo the legal analysis relied on by the trial court in reaching its decision.").

¶ 14 In interpreting a statute, we must discern and effectuate the General Assembly's intent. *See Ceja v. Lemire,* 154 P.3d 1064, 1066 (Colo.2007). To determine the legislature's intent, we first look to the statute's language, giving words effect according to their plain and ordinary meaning. *See City & Cnty. of Denver v. Indus. Claim Appeals Office,* 2014 COA 62, ¶ 10. In construing a statute's ordinary meaning, we read the "statutory scheme" as a whole to "give consistent, harmonious, and sensible effect to all parts of [the] statute." *Jefferson Cnty. Bd. of Equalization v. Gerganoff,* 241 P.3d 932, 935 (Colo.2010). If we determine that the statute is unambiguous, we enforce it as written, without applying other rules of statutory construction. *See Carruthers,* 251 P.3d at 1203. If, however, "we determine that the statute is ambiguous in some material way, we may look to extrinsic evidence of legislative intent, including, for example, prior law, legislative history, the consequences of a par-

ticular construction, and the goal of the statutory scheme." *Id.*

### B. Analysis

 ¶ 15 The CWCA allows an employee who has been terminated from employment to sue his or her former employer for earned wages and other compensation the employer has refused to pay. *See* § 8–4–109. An employee may recover wages and compensation under the CWCA if he or she complies with certain procedural steps. *Carruthers,* 251 P.3d at 1202. If the employee complies with those steps and the employer refuses to pay, the employee may recover penalties in addition to the unpaid compensation. *Id.*

¶ 16 Section 8–4–110(1), as noted, allows the court to award costs and attorney fees to the prevailing party on a CWCA claim. As relevant here, the 2007 amended statute provides:

> If, in any action, the employee fails to recover a greater sum than the amount tendered by the employer, *the court may award the employer reasonable costs and attorney fees* incurred in such action. . . . If, in any such action in which the employee seeks to recover any amount of wages or compensation, the employee recovers a sum greater than the amount tendered by the employer, *the court may award the employee reasonable costs and attorney fees* incurred in such action.

§ 8–4–110(1) (emphasis added).

¶ 17 In *Carruthers,* 251 P.3d at 1202–05, the division explained the extent of the trial court's discretion in awarding attorney fees to prevailing employers. In that case, Carruthers, an employee, argued that section 8–4–110(1) allowed an award of attorney fees to a prevailing employer only when the employee's claim was frivolous, and that his claim against the employer was not frivolous. *Carruthers,* 251 P.3d at 1202. A division of this court disagreed, holding that the plain meaning of the word "may" gave trial courts broad discretion to award attorney fees to an employer. *See id.* at 1203–05. The court then identified ten factors to guide the trial court in deciding whether to award attorney fees to

a prevailing employer. *Id.* at 1211. Those factors are: (1) the scope and history of the litigation; (2) the ability of the employee to pay an award of fees; (3) the relative hardship to the employee of an award of fees; (3) the ability of the employer to absorb the fees it incurred; (5) whether an award of fees will deter others from acting in similar circumstances; (6) the relative merits of the parties' respective positions in the litigation; (7) whether the employee's claim was frivolous, objectively unreasonable, or groundless; (8) whether the employee acted in bad faith; (9) whether the unsuccessful claim was based on a good faith attempt to resolve a significant legal question under the CWCA; and (10) the significance of the claim under the CWCA in relation to the entire litigation. *Id.*

¶ 18 In *Graham v. Zurich American Insurance Co.,* 2012 COA 188, ¶¶ 27–28, 296 P.3d 347, a division of this court held in another CWCA case that a prevailing employee was eligible to receive appellate attorney fees. Thus, it remanded the issue to the trial court and instructed the court to consider the following modified *Carruthers* factors: (1) the scope and history of the litigation; (2) the parties' relative ability to pay and the relative hardship; (3) the relative merits of the parties' positions; and (4) whether any claim or defense was frivolous, groundless, or asserted in bad faith. *Id.*

¶ 19 As an initial matter, TCBA contends that Lester agreed to the application of these modified factors when it argued at trial that *Graham* controlled concerning the penalties and attorney fees awarded to a prevailing employee under the CWCA. Thus, TCBA contends the trial court properly applied the *Carruthers* factors as enumerated in *Graham.* We disagree.

¶ 20 Contrary to TCBA's contention, the record reveals that Lester did not agree to the application of the *Carruthers* or *Graham* factors. Instead, he relied on *Graham* to argue that courts, not juries, are required to determine or impose statutory penalties. *See id.* at ¶ 13. Moreover, the *Graham* division identified certain *Carruthers* factors to guide trial courts only for the determination of appellate attorney fees. *Id.* at ¶¶ 27–28.

Consequently, the factors in *Graham* do not apply here.

¶ 21 Nevertheless, the trial court followed *Carruthers* and applied its factors in determining an award of attorney fees to Lester as the prevailing employee. In doing so, the trial court did not acknowledge that the *Carruthers* division recognized that, unlike a prevailing employer, a prevailing employee is presumptively entitled to attorney fees under the CWCA. *See* 251 P.3d at 1208–09. Additionally, the trial court did not consider the division's statement in *Carruthers* expressing no view on whether its factors for determination of an attorney fee award to a prevailing employer also applied to prevailing employees. *See id.* at 1211 n. 11 ("We express no view as to what considerations should guide a court in deciding whether to award fees to a prevailing employee.").

¶ 22 While the trial court recognized that *Carruthers* applied only to prevailing employers, it erroneously concluded that the same standard applied to awards of attorney fees to prevailing employees and employers because the statute used the same operative language. Specifically, it stated that the CWCA used the same discretionary word "may" in allowing the court to determine an award of attorney fees to both prevailing employees and employers. Although the trial court correctly noted that the operative language is parallel, it did not consider the legislative declaration contained in the 2007 CWCA amendments.

¶ 23 Generally, we do not resort to a legislative declaration when a statute is unambiguous. *See Portofino Corp. v. Bd. of Assessment Appeals,* 820 P.2d 1157, 1159 (Colo.App.1991) (stating "[i]f the language of a statute is plain and its meaning clear, it must be applied as written" without additional considerations).

¶ 24 While section 8–4–110(1) is not ambiguous as to whether a trial court has discretion to award costs and attorney fees to a prevailing employee, it is silent as to what factors a trial court should consider in making that decision. Thus, we look beyond section 8–4–110(1) to ascertain what considerations should guide the trial court. *See*

*Buckley v. Chilcutt,* 968 P.2d 112, 117 (Colo. 1998) (when explicit statutory provisions are silent regarding a matter at issue, court may interpret statute to comport with legislature's objectives).

¶ 25 To ascertain and fulfill the General Assembly's intent in these circumstances, we may consider a relevant legislative declaration. *Portofino Corp.,* 820 P.2d at 1159.

■ ¶ 26 Where a legislative declaration seeks to clarify a statutory amendment, we may resort to such interpretive analysis to fulfill the General Assembly's intent. *See id.* (stating that the General Assembly's subsequent legislative declaration concerning the intent of an amended statute required the division to consider the declaration even though "the legal process would prohibit the judicial branch from resorting to interpretive analysis of otherwise straightforward statutory enactments").

■ ¶ 27 A legislative declaration is an "explicit or formal statement or announcement about the legislation" that "indicates the problem the General Assembly is trying to address." Colo. Office of Legis. Legal Servs., *Colorado Legislative Drafting Manual* 2–40 (Feb.2014). While some legislative declarations are codified, the supreme court nevertheless treats those that are not as equal in authority. *See Stamp v. Vail Corp.,* 172 P.3d 437, 443 n. 7 (Colo.2007) (stating "the [2004 Colorado Legislative Drafting] manual is silent as to when a legislative declaration ought to be codified").

¶ 28 Here, the General Assembly wrote a legislative declaration, explaining the 2007 CWCA amendment. That legislative declaration provides that the General Assembly intended courts to interpret the "discretionary standard for awards of attorney fees and costs ... consistently with the [United States Supreme Court's] interpretation of the attorney fee provisions in the federal Civil Rights Act of 1964, 42 U.S.C. sec.2000e." [2] Ch. 381, sec. 1, 2007 Colo. Sess. Laws 1677.[3] Thus, while the plain meaning of the word "may" clearly indicates a grant of discretion, the General Assembly's "extraordinary measure" to clarify the amendment requires our consideration of the legislative declaration. *See Portofino Corp.,* 820 P.2d at 1159.[4]

¶ 29 In *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), the Supreme Court held that a prevailing plaintiff is presumptively entitled to an award of attorney fees under the Civil Rights Act of 1964. Courts around the country, including the United States Supreme Court and the Colorado Supreme Court, have consistently followed this interpretation since 1968. *See, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (stating Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizing trial courts to award reasonable attorney fees to prevailing parties in civil rights litigation so that a prevailing plaintiff would ordinarily recover attorney fees unless special circumstances would render such an award unjust (citing *Newman,* 390 U.S. at 402, 88 S.Ct. 964)); *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n,* 434 U.S. 412, 416–17, 98 S.Ct. 694, 54

---

**2.** It also states that the "attorney fee provisions in federal civil rights statutes are intended to further the goal of ensuring that private parties enforce those laws, since 'few aggrieved parties would be in a position' to seek relief '[i]f successful plaintiffs were routinely forced to bear their own attorney's fees.' *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)." The attorney fee statute cited in the legislative declaration merely provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee." 42 U.S.C. § 2000e–5(k) (2012). However, the Supreme Court has interpreted this language to mean that a prevailing party is presumptively entitled to an award of attorney fees. *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n,* 434 U.S. 412, 416–17, 98 S.Ct. 694, 54

L.Ed.2d 648 (1978); *Newman,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263; *see also Carruthers v. Carrier Access Corp.,* 251 P.3d 1199, 1209 n. 10 (Colo.App.2010).

**3.** The General Assembly's legislative declaration also provides "that the wage claim statute should be amended to create greater incentives for employers to promptly pay wages and compensation owed to current and former employees."

**4.** At oral argument, counsel for TCBA acknowledged that a trial court may consider this legislative declaration when deciding whether to award costs and attorney fees to a prevailing employee under section 8–4–110(1), C.R.S.2013.

L.Ed.2d 648 (1978) (stating that a prevailing plaintiff under the Civil Rights Act of 1964 is entitled to attorney fees "in all but special circumstances"); *Bruce v. City of Gainesville,* 177 F.3d 949, 951 n. 2 (11th Cir.1999) (citing to *Christiansburg* and *Newman* to support an award of attorney fees to a prevailing plaintiff, and stating that Congress intended prevailing plaintiffs to· obtain an award of attorney fees to "make it easier for a plaintiff of limited means to bring meritorious suits"); *Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221, 1232–33 (10th Cir.1997) (acknowledging that a prevailing plaintiff under 42 U.S.C. § 1988 is presumptively entitled to an award of attorney fees); *Carr v. Fort Morgan Sch. Dist.,* 4 F.Supp.2d 998, 1001 (D.Colo.1998) (stating a prevailing plaintiff under the Americans with Disabilities Act should be treated the same as a prevailing plaintiff claiming a fee award under Title VII or 42 U.S.C. § 1988, and therefore, is presumptively entitled to an award of attorney fees unless special circumstances would render such an award unjust); *W. United Realty, Inc. v. Isaacs,* 679 P.2d 1063, 1068–69 (Colo.1984) (concluding, "[t]he United States Supreme Court indicated in 1968 that attorney fees should generally be awarded to a prevailing plaintiff 'unless special circumstances would render such an award unjust'" (quoting *Newman,* 390 U.S. at 402, 88 S.Ct. 964)); *see also Carruthers,* 251 P.3d at 1208–09 (indicating that Newman should serve as an interpretive tool to guide determination of attorney fee awards to prevailing employees under the CWCA).

¶ 30 A leading treatise on attorney fees supports the conclusion that under the *Newman* standard, a prevailing employee is entitled to recover attorney fees "'almost as a matter of course.'" Mary Francis Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* ¶ 10.02[3][a] (2013) (quoting *Dawson v. Pastrick,* 600 F.2d 70, 79 (7th Cir.1979)); *see also Lefemine v. Wideman,* —— U.S. ——, 133 S.Ct. 9, 11–12, 184 L.Ed.2d 313 (2012) (holding that a prevailing party ordinarily recovers attorney fees under the Civil Rights Attorney's Fees Awards Act).

¶ 31 Notwithstanding this expansive interpretation, a prevailing employee's presumptive entitlement to an attorney fee award is rebuttable. *See Newman,* 390 U.S. at 402, 88 S.Ct. 964. Though the presumption is difficult to rebut, the losing party may do so by showing that "special circumstances would render [an award of attorney fees] unjust." *Id.* Special circumstances, though unlikely to exist, may arise when a plaintiff brings a suit for purposes of delay, or in bad faith; or seeks to harass, embarrass, or abuse another party or the court. *See W. United Realty, Inc.,* 679 P.2d at 1068–69. Conversely, special circumstances do not exist simply because the defendant is shown to have acted in good faith, *see, e.g., Roe,* 124 F.3d at 1233; the fee opponent is the government, *see, e.g., Carhart v. Stenberg,* 192 F.3d 1142, 1152 (8th Cir.1999); or the plaintiff is capable of paying for his or her own attorney fees due to his or her position or financial resources, *see, e.g., Democratic Party v. Reed,* 388 F.3d 1281, 1285 (9th Cir.2004).

¶ 32 Consequently, the presumption in favor of awarding attorney fees to a prevailing plaintiff in civil rights cases is so strong that a denial by the trial court on the basis of "special circumstances" is rare and disfavored. Derfner & Wolf, ¶ 10.02[3][a]. As relevant here, the General Assembly directed courts to use the *Newman* standard to incentivize employees to enforce their rights under the CWCA. *See* ch. 381, sec. 1, 2007 Colo. Sess. Laws 1677.

¶ 33 Thus, even when the trial court denies an award of attorney fees, a court of appeals "may reverse and require an award of fees when the finding of special circumstances" is unwarranted. Derfner & Wolf, ¶ 10.02[3][a]; *see also Raishevich v. Foster,* 247 F.3d 337, 346–48 (2d Cir.2001); *Libertad v. Sanchez,* 215 F.3d 206, 207–08 (1st Cir. 2000).

¶ 34 Here, the trial court erred because it did not apply the standard that a prevailing employee is presumptively entitled to an award of attorney fees.

¶ 35 Accordingly, we remand this issue to the trial court to determine whether Lester is entitled to an award of attorney fees based on the *Newman* standard.

### III. Considerations on Remand

¶ 36 Lester argues that in any event, the trial court applied three inappropriate factors in denying his request for attorney fees. We agree.

¶ 37 First, the court held that because TCBA is a nonprofit corporation, an award of attorney fees to Lester "would impose substantial hardship on this nonprofit entity and is contrary to public policy." However, courts may not consider this factor to deny attorney fees. Two courts have awarded prevailing employees attorney fees against their nonprofit employers, and have held that an employer's inability to pay is irrelevant to the determination of attorney fee awards under the CWCA. *See, e.g., Barufaldi v. Ocean City, Md. Chamber of Commerce, Inc.*, 206 Md.App. 282, 47 A.3d 1097, 1102, 1112 (2012) (the ability of defendant, a nonprofit entity, to pay is irrelevant to an employee's entitlement to attorney fees under the state wage claim statute), *aff'd*, 434 Md. 381, 75 A.3d 952 (2013) ("Denying an award of fees based on the defendant['s] ability to pay is inconsistent with the statutory goal of making the plaintiff whole."). Rather, any entity or person who creates and maintains an employment relationship for the payment of wages is subject to the CWCA. *Leonard v. McMorris*, 63 P.3d 323, 328–29 (Colo.2003).

¶ 38 Second, the trial court found that TCBA acted in good faith, and, therefore, should not be penalized with an award of attorney fees to Lester. However, as noted, a trial court may not deny attorney fees to a prevailing employee simply because his or her employer acted in good faith. *Roe*, 124 F.3d at 1233

¶ 39 Third, the court considered Lester's position as a chief operating officer and found that TCBA's contention that "Lester was not an employee entitled to regular wages was largely persuasive," agreeing with TCBA that it was not unusual for officers to volunteer for nonprofit organizations. However, the trial court's findings contradicted the jury's finding that Lester was a paid employee under an implied contract with TCBA, and its own ruling that the CWCA applied to an implied contract. Therefore, the trial court's findings were in error.

¶ 40 Because these factors do not constitute special circumstances under the *Newman* standard, the trial court erred in relying on them. Therefore, on remand, the trial court may not consider these factors in deciding whether to award Lester attorney fees.

### IV. Dismissal of Claims against JHP

¶ 41 Lester also contends that the trial court erred when it, *sua sponte*, dismissed his claims against JHP as a matter of law and, in the alternative, in a directed verdict. We conclude there was no reversible error.

#### A. Standard of Review

¶ 42 Piercing the corporate veil involves a mixed question of law and fact. *Martin v. Freeman*, 2012 COA 21, ¶ 5, 272 P.3d 1182. Thus, we generally defer to the trial court's factual findings and review de novo its application of the law to those facts. *See McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 73 (Colo.App.2009) (making an independent judgment on matters involving a legal question).

#### B. Analysis

¶ 43 The alter ego theory applies to all corporations, including nonprofit corporations. *See Krystkowiak v. W.O. Brisben Cos., Inc.*, 90 P.3d 859, 867 n.7 (Colo.2004). As relevant here, the supreme court held that "members of a nonprofit corporation may become personally liable for the debt of the corporation to the extent the alter ego doctrine applies." *Id.*; *see* Derfner & Wolf, ¶ 10.02[3][a], at p. 867. To pierce the corporate veil, the trial court must find that "the corporate entity is a 'mere instrumentality' for the transaction of the shareholders' own affairs, and 'there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist.'" *Krystkowiak*, 90 P.3d at 867 n. 7 (quoting *Gude v. City of Lakewood*, 636 P.2d 691, 697 (Colo.1981)).

¶ 44 Here, Lester alleged that JHP was the alter ego of TCBA, and therefore, JHP

and TCBA were one and the same. To establish the alter ego theory, he presented evidence that Johnson had exclusive control of both TCBA and JHP—Johnson was the Chief Executive Officer of TCBA and the sole owner, member, and manager of JHP; that TCBA funds were used for the benefit of JHP; and, that TCBA was consistently undercapitalized. Consequently, Lester requested the court to hold JHP jointly and severally liable for any judgment in his favor.

¶ 45 In a bench ruling, the trial court stated that a nonprofit organization cannot have an alter ego because it does not have shareholders. Accordingly, the court dismissed Lester's claims against JHP. In doing so, the trial court erred. *See id.* at 867.

¶ 46 Nevertheless, we may affirm the trial court on different grounds. *See Negron v. Golder,* 111 P.3d 538, 542 (Colo. App.2004). As noted, *Krystkowiak* held that the alter ego theory may be applied to "members of a nonprofit corporation." 90 P.3d at 867 n. 7. Although Lester could have sued Johnson individually under the alter ego theory, he did not do so. Because JHP is neither an individual nor "a member" of TCBA, the alter ego doctrine could not be applied against it. Therefore, the trial court reached the correct result in dismissing the claims against JHP and directing a verdict against Lester on this issue.

### V. Appellate Attorney Fees

¶ 47 Last, Lester requests attorney fees incurred in this appeal.

¶ 48 C.A.R. 39.5 provides for an award of appellate attorney fees when there is a legal basis for such an award. A prevailing employee may be entitled to appellate attorney fees under the CWCA. *See Graham,* ¶¶ 27–28. Because Lester has prevailed in this appeal, he is presumptively entitled to an award of appellate attorney fees.

¶ 49 However, we disagree with the division in *Graham* that a trial court should consider the modified *Carruthers* factors in

determining an award of appellate attorney fees. *See id.* Accordingly, we remand this issue to the trial court. If the trial court decides that Lester is entitled to attorney fees in the trial court, Lester should also be awarded appellate attorney fees in accordance with the *Newman* standard discussed in this opinion. *See Marks v. Koch,* 284 P.3d 118, 124 (Colo.App.2011).

### VI. Conclusion

¶ 50 The portion of the judgment denying Lester attorney fees under the CWCA is reversed and the case is remanded to the trial court to consider Lester's request for attorney fees, both incurred in the trial court and on appeal, under the *Newman* standard. The portion of the judgment dismissing Lester's claim against JHP under the alter ego theory is affirmed.

Navarro and Roy \*, JJ., concur